## CONTRACTS FOR SERVICES REQUIRING MECHANICAL LEARNING.

Circuit Court of Cuyahoga County.

F. E. CUDELL v. THE CITY OF CLEVELAND ET AL. *

Decided, June 26, 1905.

*Municipal Corporations—Officers—Contracts Entered Into by Unconstitutional Officers How Validated—Contract for Personal Service Requiring Skill Need Not be Advertised.*

1. Where a board of city hall commissioners appointed under an unconstitutional law, have been employed or reappointed by the proper officers under a later constitutional act, their acts or contracts if approved by the appointing officers are valid and binding.

2. Where the contract to be entered into is for personal services of a kind requiring skill and technical learning the statutory provision that where the contract involves the expenditure of more than $500, it shall be advertised and bids received does not apply.

*George A. Groot,* for plaintiff.
*N. D. Baker,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

In this action the plaintiff seeks to restrain the city of Cleveland, its auditor, treasurer and board of city hall commissioners, from carrying out a contract said board has made with the defendant, J. Milton Dyer, wherein it is provided that said Dyer is to prepare plans, as an architect, for a city hall to be erected by the city of Cleveland, and to furnish said city plans, specifications and drawings therefor, and do all the architectural service required of him in said contract, for which services the city agrees to pay said Dyer an amount equal to five per centum of the amount expended in the actual construction of said building, when completed. It is estimated that said percentage will exceed $75,000.

* Affirmed without opinion, *Cudell* v. *City of Cleveland,* 74 Ohio State, 476.

It appears from the petition that the board of public service of the city of Cleveland, duly endorsed said contract as follows:

"To the extent that the making or approval of the foregoing contract lies within the powers vested in the board of public service of the city of Cleveland, the same is hereby approved and adopted."

It is alleged that said contract is illegal and void for two reasons:

First. Because the so-called board of city hall commissioners is an unconstitutional body, incompetent to act in the premises and bind the city.

Second. Because the contract involves the expenditure of more than $500 and the commissioners did not advertise for bids and let the contract to the lowest bidder, as required by law in such cases.

To this petition a general demurrer has been filed which properly raises all the questions of law necessary to a determination of this case.

As to the first proposition it appears that the board of city hall commissioners was appointed under an act of the Legislature passed April 19, 1898 (93 O. L., 549), which authorized the appointment of such a board in the city of Cleveland alone, and is admitted to have been unconstitutional.

The general municipal code passed October 22, 1902, by Section 216, paragraph 4 thereof, undertook to prolong the life and powers of this board, as well as that of the like board of market house commissioners for the city of Cleveland, but this court, in the case of *Slatmyer* v. *Springborn*, held that said fourth paragraph of Section 216 so far as it related to said market house commission, was unconstitutional, and said board without vitality and power. That decision was recently affirmed by the Supreme Court, and, were it not for the allegation in the petition that the board of public service approved the contract in question, we should have to make the same holding with regard to the city hall commission in this case.

In connection with that fact our attention is called to the last half of the first paragraph and the second paragraph of said Section 216, which reads as follows:

"That whenever any city has in contemplation or in process of construction, or furnishing, a city hall, the director of public service may provide for the employment of five citizens of said city, to be named by them, not more than three of whom shall belong to the same political party, who shall constitute a commission under the supervision and direction of the directors of public service, for procuring the necessary land for the construction and furnishing of said city hall. Said commissioners shall have power, subject to the approval of the directors of public service, to acquire, in the name of the city, by appropriation or purchase, land for city hall purposes," etc. "Shall make all contracts necessary for the construction and furnishing of such city hall, which contracts shall be in the name of the city, and shall be made after advertisement and bidding as provided by law, for the making of other municipal contracts, and shall be subject to the approval of the directors of public service. Such commissioners shall select from their number a president, and may appoint a clerk, and shall keep a full record of their proceedings," and then follows a provision as to their compensation.

There can be no question as to the constitutionality of what has been just quoted. It is general and applies to all cities in Ohio. Have the directors of public service of the city of Cleveland acted under it and virtually employed, or re-appointed, the five citizens named under said unconstitutional act of April 19, 1898, as a commission to buy land, employ architects, approve plans and make contracts for a city hall, subject to their approval?

We think the petition sufficiently shows that they have, and that the approval of the contract in question by the directors of public service establishes the existence and powers of the defendant commissioners as such board.

So finding, it follows, that the first objection to the contract in question is not well taken.

The second objection is based upon Section 143 of the municipal code, which provides among other things:

"When any expenditure within said department (of public service) other than the compensation of persons employed therein, exceeds five hundred dollars, such expenditure shall first be authorized and directed by ordinance of council, and when so

authorized and directed, the directors of public service shall make a written contract with the lowest and best bidder after advertisement, for not less than two nor more than four consecutive weeks in a newspaper of general circulation within the city.''

It will be noticed that a distinction is made between the compensation of persons employed, and contracts involving other expenditures. The same distinction is made in the paragraphs last quoted from Section 216:

''The board subject to the approval of the directors, has power to employ architects and to make contracts'' for certain other purposes, it being provided that the latter contracts only ''shall be made after advertisement and bidding as provided by law for the making of other municipal contracts.''

A comparison of the general section applying to municipal contracts (143) and the special section (216) applying particularly to this case, and for that reason furnishing us the rule by which we should be governed in determining the issues herein, shows the common sense distinction made by the Legislature and its evident intention to exempt from advertisement, and bid, contracts for personal services.

The reasonableness of such construction is most strikingly illustrated in the present case. An architect is an artist, his work requires taste, skill and technical learning, ability of a high and rare kind. Advertising might bring many bids, but it is beyond a peradventure that the lowest bidder would be least capable and most inexperienced and absolutely unacceptable. As well advertise for a lawyer or civil engineer for the city and intrust its vast affairs and important interests to the one who would work for the least money. We find no merit in the contention.

The demurrer to the petition is sustained.